Littleton, Judge,
delivered the opinion of the court:
This claim arises under the War Contract Hardship Claims Act, popularly called the Lucas Act, 60 Stat. 902, as amended by 62 Stat. 992, 41 U. S. C. sec. 106 note. By order of the court dated October 12, 1955, the issue referred to a commissioner of this court was limited to the adequacy of the written requests for relief within the meaning of the Lucas Act.
The Lucas Act provides, in part, as follows:
That where work, supplies, or services have been furnished between September 16, 1940, and August 14, 1945, under a contract or subcontract, for any department or agency of the Government which prior to the latter date was authorized to enter into contracts and *844 amendments or modifications of contracts under section 201 of the First War Powers Act, 1941 (50 U. S. C., Supp. IV, app., sec. 611), such departments and agencies are hereby authorized * * * to consider, adjust, and settle equitable claims of contractors, including subcontractors and materialmen performing work or furnishing supplies or services to the contractor or another subcontractor, for losses * * * incurred * * * in the performance of such contracts or subcontracts. * * *
Sec. 3. Claims for losses * * * shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945, but a previous settlement under the First War Powers Act, 1941, or the Contract Settlement Act of 1944 shall not operate to preclude further relief otherwise allowable under this Act.
In previous decisions[1] of this court it has been held that a “request for relief” within the meaning of the Lucas Act must be a request sufficient to put the Government on notice that the contractor or subcontractor was asking for relief of an extralegal character, that is, relief not allowable under the contract, such as might have been granted under section 201 of the First War Powers Act.
The plaintiff in this case was a subcontractor to a number of companies having prime contracts with the Government. For the most part, the prime contracts have not been identified in the record and it is not known whether they were fixed-price contracts or cost-plus-fixed-fee contracts. That, however, does not appear important here. Plaintiff has introduced in evidence a number of letters and memoranda, addressed to certain prime contractors with whom plaintiff had subcontracts in the form of purchase orders for the manufacture of various parts to be used by said contractors for the Government.
At the hearing before a commissioner of this court, plaintiff conceded that some of the letters listed in the petition and introduced in evidence were not requests for extralegal relief and, accordingly, such letters have not been included in the findings. Plaintiff also submitted, as Exhibit E to the petition, a copy of the adverse decision of the Navy De *845 partment War Contracts Relief Board, dated March 25, 1948. The purchase orders, which were in effect subcontracts and to which the numerous requests for relief are alleged to relate, were not put in evidence.
Purchase Order A-16545—Part No. 26137—Grumman Aircraft Engineering Corp.
Sometime early in 1943, plaintiff acquired from the Seal-O-Strain Corporation, Purchase Order A-16545, issued by Grumman Aircraft Engineering Corporation in connection with Navy Department prime contract No. 90071. The subject matter of this purchase order was 400 right hand collars and 400 left hand collars. Beginning with a letter dated February 17,1943, plaintiff wrote to Grumman a number of times advising it that plaintiff was unable to manufacture the parts covered by the purchase order at the unit prices specified, without incurring a substantial loss. In the letter of February 17, plaintiff stated that it would like to raise to $12 the unit price of Part No. 26137 to be used on a Government war contract, and asked that such request be given consideration. The plaintiff was not, of course, in contract relation with the United States and had to go through the prime contractor to reach the United States, even under the War Powers Act.
On February 22, 1943, plaintiff again wrote to Grumman concerning the unit price for Part No. 26137 and requested that Grumman cancel the old order originally issued to Seal-O-Strain and issue plaintiff a new order at the unit price of $12, stating — “We trust that you will put through this increase so that we can finish the job.”
On March 27, 1943, Grumman issued a change order applicable to Purchase Order A-16545, reducing the number of right hand collars to 200 from the 400 called for under that purchase order. The number of left hand collars remained at 400, as originally specified. No increase in price was granted. At this point it does not appear what contact Grumman made with the United States about the matter of plaintiff’s claimed loss.
On May 5,1943, plaintiff wrote to Grumman thanking that company for its “communication of April 27, requesting that *846 we increase the quantity of part #26187 (left hand) collars covered by Purchase Order A-16545.” Plaintiff stated that it hesitated to accept the new order because the price at which the purchase order was being carried out was so low that plaintiff was suffering a considerable loss on production already delivered. Plaintiff stated that it feared acceptance of the additional order would only serve to increase its losses.
Plaintiff suggested that Grumman send its representative to plaintiff’s plant to check conditions of production in order to verify plaintiff’s statements concerning the losses being suffered so that Grumman might be able to consider an “upward revision in price which will tend either to alleviate or to remove the burden which production of this part has placed upon us.”
In a memorandum to Grumman dated May 19,1943, plaintiff reviewed the facts relating to the production of Part No. 26137, under Purchase Order A-16545, and stated the reasons for the losses being incurred. Plaintiff again asked Grumman to look into the matter with a view to having the prices readjusted “in such a way that our losses won’t be so terrific.”
On June 28,1943, Mr. J. A. Stamm, Director of Purchases for Grumman, wrote the following memorandum to Lieutenant R. M. Kelly, a United States Navy cost inspector:
Will you please review the attached and let us have your comment. We feel that Worth has acted properly and are entitled to an increase. If you require any further details we will dig them out.
' Mr. Stamm testified at the hearing for plaintiff, but was unable to state specifically just what documents were attached to and transmitted by the above memorandum to Lieutenant Kelly. However, it appears likely, and this is an entirely reasonable assumption, that some if not all of the above-described communications from plaintiff to Grumman, and a cost statement (made a part of plaintiff’s Exhibit 30), accompanied the memorandum.[2]
At the hearing before the commissioner of the court, Mr. Stamm, plaintiff’s witness, testified that he did not remem *847 ber what, if any, action was taken by the Navy Department on plaintiff’s requests for a price increase on Purchase Order A-16545, or what action Navy Cost Inspector Kelly took on the memorandum submitted to him.
The final determination, adverse to plaintiff, of the Navy War Contracts Kelief Board, states in paragraph 3, that on June 29, 1943, the Navy resident cost inspector denied by memorandum the request for a price increase on Purchase Order A-16545.
In paragraph 3 of the Statement of Facts of the Navy Board, the Board states that plaintiff’s price policy contemplated recoupment of losses on one order by securing an increase in prices on future orders of similar items; that subcontracts subsequent to the purchase orders in question were so priced, and that had they been completed plaintiff would not have suffered a net loss.
In its final determination denying plaintiff’s claim, the Navy Board held that the claim relative to Purchase Order A-16545 from Grumman could not be considered because final action with respect thereto had been taken on June 29, 1943, when the Navy cost inspector denied the request of June 28,1943, for a price increase, citing paragraph 204 of Executive Order 9786, issued under the Lucas Act. Paragraph 204 of the executive order has been held by this and other courts to be contrary to the express terms of the Lucas Act and, accordingly, invalid.[3] In addition, the Navy Board held that in view of plaintiff’s price policy, adopted to take care of the type of loss complained of, no occasion actually arose for amending contracts without consideration under the authority of the First War Powers Act, and that therefore the Board was unable to find that relief would have been granted under the First War Powers Act “as required by paragraph 307 of the Executive Order 9786.” [4] It is not clear from the Board’s determination or from the record in this case whether or not plaintiff’s “price policy,” as mentioned by the Board, was ever applied to Purchase Order A-16545.
*848 The petition of plaintiff indicates that following its requests for relief respecting its losses on Purchase Order A-16545, covering Part No. 26137, plaintiff received a number of subsequent purchase orders for the same part at a price or prices which, had the new purchase orders not been canceled before completion, would have enabled plaintiff to recoup the losses suffered in producing the part under Purchase Order A-16545. One of the subsequent purchase orders issued for that purpose was No. 24200 for production of the same part (No. 26137, right and left hand collars) in connection with Navy Contract NXsa 14105. There is in evidence, as plaintiff’s Exhibit 32, a change order dated September 9, 1943, from Grumman to plaintiff, calling for a reduction in the number of parts to be produced under this order. The record does not reveal the effect of such a reduction in number. There is no evidence of the cancellation of the other purchase orders for Part No. 26137.
Despite the inconclusiveness of the present record, it seems reasonable to conclude that plaintiff was attempting to recover its losses on Purchase Order A-16545 with Grumman by two methods: (1) by requesting a price increase on Purchase Order A-16545 itself, and, (2) by securing additional purchase orders for the part covered by Purchase Order A-16545 at sufficiently high unit prices to enable plaintiff to recoup the losses suffered in fulfilling the order if no price increase was granted on the order. The second method of seeking relief seems to us to have been in accordance with the understanding of the contracting parties.
Insofar as plaintiff was requesting relief from losses incurred in carrying out Purchase Order A-16545 by asking that the unit price of that order be increased, we think it was asking Grumman, and the Government through it, for extralegal relief not obtainable under the terms of the purchase order and not within the contemplation of the contracting parties or customary in their dealings with each other. This conclusion is supported by the statement in the decision of the Navy Board that on June 29,1943, the Navy cost inspector denied the request for a price increase, which request, we know, was submitted to the Navy cost inspector by Grumman on behalf of plaintiff on June 28,1943.
*849 On the question raised by defendant as to whether the submission by Grumman of plaintiff’s requests for relief to the Navy cost inspector was notice to the Navy Department that plaintiff was requesting extralegal relief from losses on its subcontract for parts or materials for the Government, we think that it was. It seems apparent that Navy Resident Cost Inspector Kelly was stationed at the Grumman plant for the purpose, among other things, of approving or disapproving requests for price increases unless he desired to send applications to higher authority. According to the later decision of the Navy Board, this inspector disapproved plaintiff’s request for a price increase on Purchase Order A-16545, and defendant does not suggest that the inspector was acting without authority in passing on such matters. We are of the opinion that the Navy Department was placed on notice of plaintiff’s request for extralegal relief from losses when Grumman submitted to the Navy cost inspector the memorandum of June 28, 1943, and the accompanying papers from plaintiff to Grumman. This was the proper way to handle the matter.
It is unfortunate that plaintiff has not made a more complete record regarding the above claim. That such a record could have been made is apparent from the findings and decision of the Navy Board which apparently had before it considerably more evidence than plaintiff has submitted to this court. However, because of the remedial nature of the Lucas Act, we take a liberal view of the evidence which plaintiff has submitted in connection with the Grumman contract and hold that plaintiff has established that in 1943 it submitted to Grumman letters and memoranda in which it requested a price increase on Purchase Order A-16545; that such request by plaintiff was a request for extralegal relief under the First War Powers Act and was duly submitted by Grumman to the proper official of the Navy Department for approval or disapproval within the authority granted that department by the First War Powers Act to grant such extralegal relief; and that such relief was denied by the Navy resident cost inspector. Inasmuch as this request for extralegal relief was brought to the attention of the proper Government agency prior to August 14, 1945, and prior *850 denial by that agency of the claim does not preclude recovery under the Lucas Act, we conclude that plaintiff has established that it had on file with the Navy Department an adequate and proper request for relief within the meaning of the Lucas Act in connection with the Grumman Purchase Order A-16545 for material or supplies to be furnished to the Government.
The War Contracts Belief Board did not properly consider the case and in at least one respect committed error which is sufficient to vitiate its decision.
Purchase Order P-91397—Part No. M35571—Eastern, Aircraft
Purchase Order P-91397 was issued to plaintiff by Eastern Aircraft, Trenton Division of General Motors Corporation.
A letter, dated November 3,1943, from plaintiff to Eastern Aircraft did not request relief of any kind.
A letter from plaintiff to Eastern Aircraft, dated December 17, 1943, discussed in detail problems which had arisen in connection with production of items under a number of purchase orders and revisions thereto, including P-91397. The letter contained no request for relief.
On March 7, 1944, plaintiff wrote to Eastern Aircraft describing the production difficulties it was experiencing in producing items under Purchase Orders 91397 and 919848. Plaintiff informed Eastern Aircraft that production costs had been running high through no fault of plaintiff, and Eastern Aircraft was requested to have its representative investigate the circmnstances under which the order had been handled by Eastern. Plaintiff expressed the hope that “any credit memorandum necessary may be held to the absolute minimum.”
On March 10, 1944, Eastern Aircraft issued a revision to Purchase Order P-91397, Part No. M35571, reducing from 700 to 138 the number of parts required under the purchase order. The purchase order revision carried the stamp, dated March 11,1944-, of the Navy Bureau of Aeronautics, with the name of Lieutenant Commander A. E. Poor as the approving official. At the hearing before a commissioner of this court, plaintiff’s counsel stated that the reduction authorized by *851 the revision was for the purpose of reducing plaintiff’s costs.
None of tbe letters relied on in connection with this purchase order contain requests for extralegal relief from losses.
Pwrchase Order BA-P-91279—Part No. M-20860—Revision 1610—Eastern Aircraft
On November 15,1943, plaintiff wrote to Eastern Aircraft, Baltimore Division of General Motors Corporation, concerning Purchase Order BA-P-91279 and discussing the prices which plaintiff would charge if it accepted the proposed order. On November 20, 1943, Eastern Aircraft replied to plaintiff pointing out inconsistencies in the prices noted in plaintiff’s letter of November 15,1943, and the prices in the quotation submitted by plaintiff. On November 22, 1943, plaintiff wrote to Eastern Aircraft describing the additional work it had been required to do to produce the parts called for under the purchase order and explaining the basis for the prices charged. Plaintiff noted that the prices were somewhat above the level originally contemplated and asked for a purchase order revision to reflect such increase.
It is impossible to tell whether the above correspondence involved a request for legal or extralegal relief, or whether it merely represented ordinary negotiations between Eastern Aircraft and plaintiff in connection with the purchase order. There is no evidence that the contents of the above letters were ever communicated to the Government for any purpose. We hold that plaintiff has not established that it had on file with a Government agency a request for extralegal relief from losses suffered on Purchase Order BA-P-91279.
Pwrchase Order 368711 — Western Electric Company
On October 12, 1944, plaintiff wrote to the Western Electric Company, Inc., Baltimore, Md., concerning Purchase Order 368711, advising that it had suffered a loss of $972.97 on this order and asking to be reimbursed to that extent. On December 8, 1944, plaintiff wrote to Western Electric and reminded it of its earlier request to be paid $972.97. At the hearing before a commissioner of this court, plaintiff’s counsel stated that the $972.97 was ultimately paid to plaintiff. *852 Although plaintiff’s counsel indicated at the hearing that plaintiff had suffered additional losses on that purchase order, he offered no requests for relief concerning such losses.
Purchase Order B-25687—Eastern Aircraft
On March 2, 1945, plaintiff wrote to Eastern Aircraft, Baltimore Division of General Motors Corporation, concerning Purchase Order B-25687, advising Eastern Aircraft that because it had become necessary to sandblast the part being produced, the cost would be 45 cents more than anticipated. Plaintiff asked Eastern Aircraft to revise the purchase order accordingly and to make it retroactive to the shipment of February 27, for 5 pieces.
On March 15,1945, plaintiff wrote a letter to Eastern Aircraft concerning the same purchase order. This letter merely contained information and did not ask for anything. Neither of the above letters contained requests for extralegal relief.
Part No. 31031-1 Fitting—Eastern Aircraft
On March 22, 1945, the Assistant Purchasing Agent for Eastern Aircraft, Baltimore Division of General Motors Corporation, wrote to plaintiff concerning Part No. 31031-1 which was being produced by plaintiff for Eastern Aircraft. The record does not indicate under what purchase order this part was being produced. The letter contained directions to plaintiff regarding the use of longer bushings, the scrapping of present bushings, and the elimination of scars and ridges in bushings which were caused by plaintiff’s method of line reaming. Eastern Aircraft authorized plaintiff to go ahead according to instructions and to expend whatever sums were necessary to enable it to ship the first completed pieces quickly. It is not apparent for what purpose this letter is relied on by plaintiff. It is clearly no evidence of a request by plaintiff for relief of any kind.
Purchase Order B-25579—Part No. M34623-1—Eastern Aircraft
On July 12,1945, plaintiff wrote to Eastern Aircraft, Baltimore Division of General Motors Corporation, requesting *853 that it be released from filling Purchase Order B-25579 and that it be paid the costs of labor and material. Plaintiff was apparently losing so heavily on this purchase order that it was unwilling to continue production. There was no request for any relief other than to be relieved of completing the contract and there is no evidence that such a request was ever communicated to an official of the Government by the prime contractor, Eastern Aircraft.
We conclude on the whole record that it was only with respect to plaintiff’s alleged losses on the Grumman Purchase Order A-16545 that there was on file with an authorized Government agency a written request for extralegal relief within the meaning of the Lucas Act. None of the other documents relied on by plaintiff constitute such requests for relief and, except in the case of the revision of Purchase Order P-91397, there is no evidence that any of the documents were brought to the attention of a Government agency.
Since we have found that plaintiff had an adequate claim for relief under the Grumman Purchase Order A-16545, the case will be remanded to the commissioner for a trial of the remaining issues arising under that purchase order. As to plaintiff’s claims under all the other contracts, the petition is dismissed.*
It is so ordered.
Laramore, Judge; Madden, Judge; Whitaker, Judge; and Jones, GMef Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the briefs and argument of counsel, and the report of Commissioner Currell Vance, makes the following findings of fact:
1. Plaintiff is a New York corporation, which at all times material to this suit had its principal place of business in the City, County and State of New York. Between September 16, 1940, and August 14, 1945, plaintiff furnished work, supplies and services under subcontracts with various prime contractors who, in turn, are alleged to have held their prime contracts with various Government departments and *854 agencies. Neither the prime contracts nor the subcontracts have been introduced in evidence.
2. On January 80, 1947, plaintiff filed with the Navy Department War Contracts Eelief Board a claim for relief under the Lucas Act (60 Stat. 902, as amended by 62 Stat. 992, 41 U. S. C. sec. 106 note). On March 25, 1948, plaintiff’s claim was denied by that Board.
3. On September 24,1948, and within the time allowed by the Lucas Act, plaintiff filed its claim in this court.
4. By order of the court, dated October 12,1955, the issue to be tried by a commissioner of this court was limited to the adequacy of the requests for relief relied on by plaintiff.
Purchase Order A-16545—Part No. 26137—Grumman Aircraft Engineering Corporation—Navy Department Prime Contract No. 90071
5. Early in 1943, plaintiff had acquired from the Seal-O-Strain Corporation, Purchase Order A-16545, issued by the Grumman Aircraft Engineering Corporation in connection with Navy Department prime contract No. 90071. The subject matter of the purchase order was 400 right hand collars and 400 left hand collars.
6. On February 17,1943, plaintiff wrote Grumman a letter reading as follows:
In accordance with our telephone conversation of yesterday we wish to advise we have looked over Part No. 26137, right and left hand collar, specified in your order A16545 and find that the price is too low to justify a profit.
We also discussed this matter with your Mr. Mockler this morning who suggested we follow this matter up directly with you. We do not know how this price was arrived at but at any rate, it is considerably too low and we would like to raise it to $12.00 each, which is our best estimate for the machining involved.
Would you please give this your consideration and let us know at your earliest convenience whether this can be arranged. For your information, we are continuing tool work for the production of these parts at the present time.
Thanking you for your cooperation in this matter, we are,
*855 7. On February 22,1943, plaintiff wrote a letter to Grumman as follows :
Keferring to our telephone conversation regarding part #26137, please be advised that we would like to have you issue a new order to the Worth Engineering Co. covering this part and at the same time cancel the old order to Seal-O-Strain Corp.
We have gone over our records carefully and have made an accurate check on the time necessary to machine these parts and find that our price to you will have to be $12.00 each per piece as previously advised.
We are practically completed with the tooling for this job and so far have machined up a considerable amount of material.
We trust that you will put through this increase so that we can finish the job. We would very much appreciate your immediate cooperation in this matter as we are not stopping work and expect to start shipping these fittings to you in a very short time.
Thank you very much for your help in this matter.
8. On March 27, 1943, Grumman issued a change order to plaintiff applicable to Purchase Order A-16545, reducing the number of right hand collars called for under that purchase order from 400 to 200. The number of left hand collars called for in the original purchase order remained 400. No increase in unit price was granted.
9. On May 5, 1943, plaintiff wrote the following letter to Grumman:
We will acknowledge and thank you for your communication of April 27, requesting that we increase the quantity of part #26137 (left hand) covered by your purchase order A16545. We have hesitated to send you acceptance of this arrangement due to the fact that the price for which this work was accepted has proved to be distinctly unfavorable to us.
It might have been possible for us to improve the production operations and reduce our cost but the part was so very urgently needed at your plant that we had no choice but to concentrate every effort on the actual production and proceed as best we could. This resulted m a rather heavy loss to us on the production already delivered and any increased quantity we turn out for you will simply serve to increase our loss.
We are sure that this is a situation which you do not wish to have exist and under the circumstances we would *856 greatly appreciate your cooperation to the extent of assigning one of your representatives to call here and check our actual production in order to verify our statements. Your representative will unquestionably report to you that our report is based on absolute truth and it might then be possible for you to give some consideration to an upward revision in price which will tend either to alleviate or to remove the burden which production of this part has placed upon us.
10. On May 19, 1943, plaintiff addressed a memorandum to Grumman reading as follows:
On December 31, 1942, Seal-O-Strain Corporation, our predecessor, accepted an order for part #26137, 400 right pieces and 400 left pieces, to be delivered in such time that the last delivery would be March 6th, 1943.
All the orders from other companies which Seal-O-Strain had were refused by us to be continued, except your part #26137, because we were informed that this part is very badly needed by you.
_ When we took over the shop on March 8,1943, not one single acceptable piece was delivered.
We found the tooling for this part was very poor and our first intention was to change tooling for which purpose we had to stop production for two to three weeks, but we found out from your representative that the part was so badly needed that we were advised to go ahead with the same tooling because the part was holding up assembly of practically ready to fly planes.
Under such circumstances we had to continue our production knowing that we are losing money. This fact we brought to your attention in two letters (copies of each are attached to this memorandum, also attached is statement of actual cost for us of this part made out of stock).
I hope that when you will look into this matter you will find it possible to readjust the prices in such way that our losses won’t he so terrific.
11. On June 28, 1943, Mr. J. A. Stamm, Director of Purchases of Grumman, submitted to a Navy cost inspector a memorandum stating:
Will you please review the attached and let us have your comment. We feel that Worth has acted properly and are entitled to an increase. If you require any further details we will dig them out.
*857 The memorandum does not indicate precisely what documents were attached, and Mr. Stamm, the writer of the memorandum, in his testimony at the bearing before a commissioner of this court could not recall just what letters were forwarded with the memorandum to the Navy resident cost inspector.
12. On June 18, 1947, Mr. J. A. Stamm, Director of Purchases for Grumman, wrote to plaintiff as follows:
With reference to your letter of June 4,1947, we. wish to advise that our records shown [sic] that your requests for price increase on our Part 26137 (Collar) were transmitted to the Resident Cost Inspector, U. S. N., Bethpage, during May and J une of 1943.
13. Paragraph 3 of the “Determination” of the Navy Department War Contracts Relief Board (March 25, 1948) states in part as follows:
At the hearing, evidence was adduced in one instance to the effect that a request for a price increase, dated 22 February 1943, was made to a prime contractor to the Resident Cost Inspector. * * *
14. It seems reasonable to conclude that there was attached to the Grumman memorandum and forwarded to the resident cost inspector on June 28, 1943, all or most of the correspondence between plaintiff and Grumman commencing with the letter of February 17, 1943, regarding the losses which plaintiff was incurring in producing Part No. 26137 under Purchase Order A-16545. According to the Navy Board, the letter of February 22, 1943, was given to the Navy cost inspector.
15. The Navy Board’s determination of March 25, 1948, made the following statement concerning plaintiff’s request for a price increase on Purchase Order A-16545:
3. * * * The Resident Cost Inspector denied the request by memorandum dated 29 June 1943.
Purchase Order P-91397—Part No. M35571—Eastern Aircraft, Trenton Division of General Motors Corporation.
16. On November 3, 1943, plaintiff wrote a letter to Mr. F. Robert Lee of Eastern Aircraft — Trenton Division, Trenton, New Jersey, as follows:
*858 This will confirm our today’s telephone conversation quoting you a price of $27.71 each on 700 Tail Wheel Castors, Part #35571.
It is our understanding that you will arrange to send us the necessary forgings which will be billed to us at the rate of $12.40 each, f. o. b. our plant. Our price for the finished part is also f. o. b. our plant.
We hope this will be satisfactory and assure you of our very best attention to the order in the event you so favor us.
17. A letter from plaintiff to Eastern Aircraft, dated December 17, 1943, discussed in detail problems which had arisen in connection with the production of items under a number of purchase orders and revisions, including P-91397. The letter contained no request for relief.
18. On March 7, 1944, plaintiff wrote to the General Accountant, Eastern Aircraft — Trenton Division, General Motors Corporation, a letter reading as follows:
This is to acknowledge your letter of March 3.
In an attempt to account for the raw stock sent to us on your Purchase Order No. 919848, please be advised that we have shipped 573 Pulleys to Trenton. The balance of this order was transferred to Tarrytown, N. Y., on their Purchase Order No. TTP-98013. We made a shipment of 232 pieces or 95 pieces less than the total 900 pieces which were required on both orders. This would account for 332 lbs. of raw stock, leaving a total of 39 lbs. for spoilage or scrap.
As far as the Scrap Report on Part #35571 is concerned, we are somewhat disturbed at the amount of this total weight. If you will contact your Mr. William Grupe, he will inform you as to the real story behind this particular order. It runs something like this.
We are given an order for 700 of these parts and an additional order for 700 more. The price, therefore, was based on a production run and also upon the assumption that good Castings would be furnished us. In addition to this, we had an engineering change for the two (2) tapped holes on one of the forks which did not appear on the original order. As things developed, tremendous pressure was put on the Worth Engineering Company to furnish these Casters as quickly as possible and then the quantity was cut to between 100 or 200 pieces, when it was found you could no longer procure the Castings with the cored holes in good shape.
*859 Then, however, in an effort to be of assistance to Eastern Aircraft, we literally worked day and night on this job regardless of the expense incurred, in order to help you maintain your production. We were following orders of your field man, Mr. Eoy Henderson, and the Casters were practically made one at a time. During this period, we found Castings which would not clean up due to blow holes, the forks were not equal distance from the center line and would not clean up properly and we did not at any time have sufficient Castings in stock to make a production set-up. On top of this, we submitted two (2) samples which Mr. Henderson forwarded to Trenton and gave us verbal instructions to proceed. Approximately three (8) weeks after this happened, we were notified by your Inspection Department that none of the parts furnished were perfect and considerable rework had to be done.
Inasmuch as our costs on this job were very high due to your deliveries and lack of Castings for production runs, we are asking you to investigate fully the circumstances under which this order was handled. Owing to the fact that many of the forgings were faulty, we strongly believe that it is unfair that we should be put to any added expense and we respectively [sic] ask you to consider the possibility, after having ascertained the facts in this case, that any credit memorandum necessary may be held to the absolute minimum.
19. On March 10,1944, the purchase order referred to in the letters set forth in findings 16,17 and 18 was changed at the request of plaintiff to reduce the quantity from 700 parts to 138 parts. This revision was brought to the notice of a representative of the Bureau of Aeronautics at Trenton, New Jersey.
Purchase Order BA-P-91279—Part No. M-20860—Revision No. 1610—Eastern Aircraft
20. On November 15,1943, plaintiff wrote to Eastern Aircraft, Baltimore Division, General Motors Corporation, concerning Purchase Order BA-P-91279, stating the prices which plaintiff would charge Eastern Aircraft if the proposed order was accepted. On November 20, 1943, Eastern Aircraft replied to plaintiff pointing out inconsistencies in the prices contained in plaintiff’s letter of November 15,1943, with the prices previously quoted by plaintiff. On Novem *860 ber 22, 1948, plaintiff wrote to Eastern Aircraft describing the additional work it had been required to do to produce the parts called for under the purchase order and explaining the basis for the higher prices charged. Plaintiff noted that the prices were somewhat above the level originally contemplated and asked Eastern Aircraft for a purchase order revision to reflect such increase.
There is no evidence that any of the information contained in the above letters was called to the attention of any Government agency.
Purchase Order 368711—Western Electric Oomyany
21. On October 12, 1944, plaintiff wrote to Western Electric Company, Inc., Baltimore, Maryland, concerning the above purchase order, advising that it had suffered a loss of $972.97 and asking to be reimbursed to that extent.
On December 8, 1944, plaintiff wrote to Western Electric reminding that company of the request to be paid the $972.97.
22. Plaintiff was paid the $972.97 as requested and there is no evidence of any further request to the prime contractor for relief from any other possible losses on this purchase order. It does not appear that any information concerning this transaction was communicated to a Government department or agency.
Purchase Order B-25687—Eastern Aircraft
23. On March 2, 1945, plaintiff wrote a letter to the Purchasing Department, Eastern Aircraft — Baltimore Division, General Motors Corporation, as follows:
On January 26, we received a letter from you requesting us to quote on plating of Part #51051-1 and 2 Bushings #34694-1. Our quotation was 930 each and we subsequently received your Purchase Order Revision No. 10692 dated February 19 to cover this cost.
It develops, however, that in order to obtain proper cadmium plating job, it is necessary to sandblast the Hooks prior to plating. This additional operation will cost 450 and we will therefore kindly ask you to revise your Purchase Order accordingly making it retroactive to the shipment of February 27 for 5 pieces.
*861 24. On March 15, 1945, plaintiff again wrote to the Purchasing Department, Eastern Aircraft Division, a letter reading as follows:
In reply to your letter of March 14 relative to individual Brinelling of Part #51051, we wish to advise that to date we shipped 59 pieces. Beginning with the next shipment, we will attach Brinell readings to each part shipped and will start to charge you an additional 25$, making a total of 501 pieces to complete the order.
With reference to your Purchase Order No. B-25579, we will determine the cost for 100% Brinelling at a later date and will advise you accordingly.
25. There is no evidence that any of the information contained in the above letters was brought to the attention of a Government agency.
Part No. 31031-1—Fitting—Eastern Aircraft
26. On March 22, 1945, the assistant purchasing agent for Eastern Aircraft, Baltimore Division, General Motors Corporation, wrote to plaintiff concerning Part No. 31031-1 which was being produced by plaintiff for Eastern Aircraft. The record does not disclose under what purchase order this part was being produced. The letter contained directions to plaintiff regarding the use of longer bushings and the elimination of scars and ridges in bushings caused by plaintiff’s method of line reaming, and directed the scrapping of present bushings when the new ones arrived. Eastern Aircraft authorized plaintiff to go ahead according to instructions and to expend whatever sums were necessary to enable plaintiff to ship the first completed pieces quickly.
There is no evidence that the information contained in the above-described letter was called to the attention of a Government agency.
Purchase Order B-25579—Part No. M34623-1—Eastern Aircraft
27. On July 12, 1945, plaintiff wrote to Eastern Aircraft, Baltimore Division, General Motors Corporation, requesting that it be released from filling Purchase Order B-25579 and that it be paid the costs of its labor and material. Plaintiff was apparently losing so heavily on this purchase order that *862 it was unwilling to continue production. There was no request for relief other than to be relieved of completing the contract.
There is no evidence that this request was ever communicated to an official of a Government agency.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the decision herein, the court concludes as a matter of law that plaintiff had an adequate claim for relief under the Grumman Purchase Order A-16545, and the case is remanded to the commissioner for a trial of the remaining issues arising under that purchase order. The court further concludes that as to plaintiff’s claims under all the other contracts it is not entitled to recover, and as to them the petition is dismissed.*

 George W. Humphrey, et al. v. United States, 121 C. Cls., 390; American Construction Co. v. United States, 123 C. Cls., 408, cert. denied 34S U. S. 922.

 Plaintiff’s Exhibit 6 consists of a letter, dated June 18, 1947, to plaintiff from the Director of Purchases to Grumman, stating that the records of Grumman indicate that plaintiff’s requests for a price increase op Part No. 26137 were transmitted to the Navy in May and June of 1943.

 Howard Industries v. United States, 113 C. Cls. 231.

 This regulation has also been held invalid as conflicting with the Lucas Act. Pittston-Luzerne Corp. v. United States, 84 F. Supp. 800; A. J. Spicer v. United States, 113 C. Cls. 267; Waxman v. United States, 125 C. Cls. 464.

As amended July 18, 1956.

As amended July 18, 1956,