Madden, Judge,
delivered the opinion of the court:
This claim arises under the War Contract Hardship Claims Act, known as the Lucas Act, 60 Stat. 902, as amended, 62 Stat. 992, 41 U. S. C. Sec. 106 note. On July 12, 1956, the *471 court made findings of fact and rendered an opinion on the sole issue of the adequacy of the plaintiff’s written requests for relief within the meaning of the Lucas Act. 135 C. Cls. 843. The court held that the plaintiff had filed an adequate request for relief in connection with Grumman Aircraft Engineering Corporation Purchase Order A-16545 and the case was remanded for a trial of the remaining issues under that purchase order.
Purchase Order A-16545 was issued on December 31,1942, by Grumman Aircraft to Seal-O-Strain Corporation for the machining of parts for aircraft under Grumman’s prime contract with the Navy Department, No. 90071. Purchase Order A-16545 had a total value, including a tooling allowance of $1,320, of $8,088.
After acceptance of the purchase order from Grumman, Seal-O-Strain became involved in bankruptcy proceedings and on February 17,1943, its plant and equipment were leased to the plaintiff, Worth Engineering, for an indefinite term. Under the terms of the lease, plaintiff did not assume an obligation to perform work orders previously accepted by Seal-O-Strain, but by voluntary agreements with prime contractors, plaintiff completed the Grumman purchase order and five other small uncompleted work orders with other prime contractors. On the small five work orders, plaintiff sustained a loss of $3,152.98.
At the time the plaintiff was prevailed upon by Grumman to perform the work under Order A-16545, work thereunder was in process only to the extent that tools had been provided. As noted in our prior decision, supra, plaintiff immediately applied to Grumman for a price increase. Action on the request was deferred until after completion of the work and at that time the requested price increase was denied.
Plaintiff satisfactorily completed work on Purchase Order A-16545 on May 22,1943, at a total cost of $31,239. Through no fault or negligence on its part, plaintiff sustained a loss on this order of $23,582.46.
The plaintiff was wholly engaged on war contracts with the Government and on work subcontracts with Government prime contractors during the Lucas Act period. Its overall *472 loss on such, work totaled $96,368.25 of which. $23,582.46 represented the plaintiff’s loss on the Grumman purchase order.
The Government contends that the loss suffered by plaintiff in connection with the Grumman purchase order was a capital loss rather than a performance loss on the theory that the taking over by plaintiff of the Grumman purchase order was a part of a lease-purchase agreement between plaintiff and the bankrupt original contractor, Seal-O-Strain. If, as contended by the defendant, plaintiff’s loss was incidental to the purchase of the Seal-O-Strain assets rather than a loss incurred in the performance of the Purchase Order, the loss would not be covered by the Lucas Act.
The plaintiff leased the Seal-O-Strain plant and equipment located at 254 Navy Street, Brooklyn, New York, on February 17, 1943. The lease was to continue for at least 15 months, i. e., from February 15, 1943, to May 14, 1944. The lease provided for an average monthly rental of $5,666.67 for the first 15 months and for rent at the rate of $5,000 per month thereafter.
On the same day, February 17, 1943, that plaintiff leased the plant and equipment from Seal-O-Strain, plaintiff’s parent corporation, Industrial Finance Corporation obtained from Seal-O-Strain an option to purchase the plant and equipment for $190,000 less all rentals paid by the plaintiff as lessee of Seal-O-Strain up to the date upon which option to purchase might be exercised. On January 17, 1945, Industrial Finance’s option to purchase the Seal-O-Strain plant was cancelled and a new option to purchase the same property was executed under which Industrial Finance had the right to purchase the property for $45,000 but only after rentals had been paid by the plaintiff to Seal-O-Strain up to and including April 17, 1945. On the same day that the new option to purchase agreement was executed between Seal-O-Strain and Industrial Finance, the lease between Seal-O-Strain and plaintiff was amended to provide that after April 17, 1945, the monthly rentals would be reduced from $5,000 a month to $1,500 a month for the remainder of plaintiff’s occupancy.
*473 By April 17,1945, plaintiff had paid rent to Seal-O-Strain in the total amount of $145,000 and thereafter, in May 1945, plaintiff paid $1,500 for the lease month ending on June 14, 1945.
On June 13, 1945, Industrial Finance decided to exercise its option to purchase the Seal-O-Strain property at the option price of $45,000. Immediately after exercising its option, Industrial Finance transferred the property to the plaintiff, its subsidiary, at a price of $85,000 plus $1 for patents. The plaintiff paid its parent only $45,000 and received the difference of $40,000 from its parent as paid-in surplus. In the following year, during the period from January to March 1946, the plaintiff liquidated and sold the plant and its assets, including additional equipment purchased and installed in the plant for its operations, and it realized a net profit on the sale of $43,843.36 including the $40,000 of donated surplus which was reflected in the book value of its assets.
On the basis of the above facts, the defendant contends that since the rentals paid by plaintiff to Seal-O-Strain up to April 17, 1945, plus the actual cost of the property to plaintiff in June 1945 ($45,000) was equivalent to the original option purchase price of $190,000 agreed to by Seal-O-Strain and Industrial Finance, the rental payments of $145,000 made by plaintiff should be capitalized as a part of the cost to the plaintiff of the plant and the plaintiff’s acquisition should be made retroactively effective to February 17, 1943, the date on which the lease between plaintiff and Seal-O-Strain was executed and on which the original purchase option between Industrial Finance and Seal-O-Strain was executed. The defendant allowed depreciation in the amount of $64,837.54 for the entire period as an expense of performance in substitution for the rental payments made by plaintiff, but no allowance was made for interest, taxes and other normal ownership expenses. The difference of $80,162.46 between the plaintiff’s claimed expense of $145,000 for rent, and the $64,837.54 of depreciation allowed by the defendant, was applied by the defendant as a reduction of the claimed overall loss to plaintiff of $96,368.25 mentioned above, leaving plaintiff with a net loss of only $16,205.79. *474 By adjusting Purchase Order A-16545 for the allocable portion of this reduction, the defendant contends that the loss on this purchase order would be only $18,459.84 with recovery in this suit limited by the Lucas Act to the net overall loss of $16,205.79.
We do not accept the defendant’s analysis. Purchase Order A-16545 was completed in May 1943, at which time plaintiff was merely a lessee of Seal-O-Strain, and plaintiff’s parent, Industrial Finance, had not then exercised its option to purchase the Seal-O-Strain plant and equipment. In January 1945, the original option to purchase this property held by Industrial Finance was cancelled, and the purchase of the property in June 1945, was under an entirely new agreement. The plaintiff did not become the owner of the plant and equipment until June 1945, more than two years after the work on Purchase Order A-16545 was completed. In addition, the record contains no satisfactory evidence of the ownership expense of the property, other than depreciation, during the lease period from February 17,1943, to June 13, 1945, nor whether the depreciation of $64,837.54 would be an adequate depreciation allowance for the class of equipment employed for this war work. We are of the opinion that plaintiff’s loss in the performance of Purchase Order A-16545 was a performance loss and not a capital loss. Since it incurred net losses on all its war contracts in excess of its $23,582.46 loss on Purchase Order A-16545, it is entitled to recover that amount. The Department of the Navy is hereby directed to settle plaintiff’s claim in accordance with this opinion.
It is so ordered.
McLaughlin, District Judge, sitting by designation; Whitaker, Judge; and Jones, Chief Judge, concur.
Laeamore, Judge, took no part in the consideration and decision of this case.
EINDINGS OF EAOT
The court, having considered the evidence, the report of Trial Commissioner Currell Vance, and the briefs and argument of counsel, makes findings of fact as follows:
*475 1. This claim arises under the War Contract Hardship Claims Act, popularly called the Lucas Act, 60 Stat. 902, as amended by 62 Stat. 992, 41 U. S. C. Sec. 106. On July 12, 1956, as amended by its order of July 18, 1956, on the basis of prior hearings held herein, the court made findings of fact and a conclusion that as a matter of law plaintiff had filed an adequate request for relief under Grumman Purchase Order A-16545, and remanded the case to the Commissioner for a trial of the remaining issues under that purchase order. The court dismissed the petition of plaintiff as to other claims set forth therein.
The following findings supplement the court’s findings of July 12,1956:
2. Purchase Order No. A-16545 was issued December 31, 1942, by Grumman Aircraft Engineering Corporation to Seal-O-Strain Corporation, hereinafter referred to as Seal-O-Strain. The purchase order carried a preference rating of AA-1 and covered aircraft and aeronautical material for Navy contract No. 90071. The specific material covered by the order was 400 right hand collars and 400 left hand collars. The agreed price was $8.46 for each collar plus an additional lump sum of $1,320 for tooling, giving the purchase order a total value of $8,088. Grumman, the prime contractor, supplied the castings on consignment and Seal-O-Strain, the subcontractor, was to machine the parts.
3. In 1943, Seal-O-Strain became involved in bankruptcy proceedings and its plant and equipment were leased to Worth Engineering Co., Inc., the plaintiff herein, on February 17,1943, under a lease for an indefinite term. After taking over the plant of Seal-O-Strain in February 1943, plaintiff was engaged only in war contracts throughout the whole period of its subsequent operations.
4. Although plaintiff was under no obligation to complete any of the orders which had been accepted by Seal-O-Strain, plaintiff did undertake to complete five small uncompleted orders for which it was ultimately paid $1,391.31. The cost to plaintiff of completing those orders was $4,544.29 resulting in a loss to plaintiff of $3,152.98. The work on these five orders was under new agreements negotiated with the prime *476 contractors and was voluntarily undertaken and performed by the plaintiff.
5. Purchase Order A-16545 for the 800 right and left hand collars was only in the process of tooling when plaintiff leased the Seal-O-Strain plant. Grumman, the prime contractor on this order, prevailed upon the plaintiff to perform the order because of the urgent need for the parts in connection with war production. Plaintiff found the existing tooling inadequate to perform the machining economically, but Grumman urged the use of the available tools in order to avoid delay in deliveries.
6. On March 27, 1948, Grumman issued to plaintiff an amendment to Order A-16545 reducing the requirement for right hand collars to 200 instead of 400. Later adjustments increased the price of the collars being manufactured to $6,336.54 but did not make any change in the previous tooling price of $1,320.
7. The plaintiff satisfactorily completed the work on Order A-16545 by May 22, 1943. Its cost of performance was $31,239, consisting of $3,945.94 for tooling costs and $27,293.06 for machining the parts. Plaintiff was paid $7,656.54 resulting in a loss to plaintiff of $23,582.46 on this order.
8. Although the plaintiff applied to Grumann for an upward adjustment in the price of the parts under Order A-16545 before it commenced work, no action was taken on this request until after the order was completed and thereafter the request was denied.
9. The loss sustained by the plaintiff in the performance of Order A-16545 did not result from any fault or negligence on the part of the plaintiff.
10. The plaintiff was a wholly owned subsidiary of Industrial Finance Corporation, a Virginia corporation, authorized to do business, in the State of New York. Industrial Finance Corporation (hereinafter referred to as “Industrial Finance”) merged with the Morris Plan Corporation of America in late 1945 and thereafter the latter company became the surviving parent corporation.
11. As noted above in finding 3, the plaintiff and Seal-O-Strain entered into an agreement of lease whereby plaintiff *477 rented a plant of tbe bankrupt corporation located at 254 Navy Street, Brooklyn, New York, together with all tbe equipment and machinery therein. The lease was to run for at least 15 months, or until the war in Europe was over, whichever was later, and for one year beyond, at the option of the plaintiff. The rent was to be 5 percent of the net sales of goods produced but not less than $85,000 for the 15-month period from February 15, 1943, to May 14, 1944, or an average minimum monthly rental of $5,666.67. The lease provided that rental payments after May 14,1944, were to be at the rate of $5,000 per month.
12. Simultaneously with the making of plaintiff’s lease with Seal-O-Strain, plaintiff’s parent, Industrial Finance, acquired an option to purchase the leased property for $190,000. The purchase option agreement provided that it could be exercised by Industrial Finance at any time after February 17, 1943. In substance, the option provided that in the event it was exercised, the aggregate rentals paid by plaintiff to Seal-O-Strain under its lease would be applied to the purchase price to be paid by Industrial Finance in the manner shown in the excerpt quoted below. The purchase option agreement made specific reference to the lease agreement between plaintiff and Seal-O-Strain executed on the same day. The provision in -the option purchase agreement relating to the rent paid by plaintiff under its lease read as follows:
* * * the parties hereto having agreed that the value of the capital assets will decrease by reason of depreciation, deterioration and obsolescence, to the extent of approximately the aggregate of the rentals so paid by Worth Engineering Company, Inc., in view of the fact that the said premises and plant were built and set up primarily for the manufacturing of war products.
13. On <January 17, 1945, the agreement of lease between Seal-O-Strain and plaintiff was modified in writing. The modification continued the monthly rental of $5,000 per month, which had been in effect since May 14, 1944, through the lease month of April 17, 1945 and provided that commencing with the lease month of May 17, 1945, the monthly rental would be $1,500 for the remainder of the period of the lease.
*478 14. On January 17, 1945, Seal-O-Strain and Industrial Finance entered into a new agreement whereby the purchase option agreement between them of February 17, 1943, was cancelled and a new option-to-purchase agreement was entered into. Under this new agreement, Industrial had the right to purchase the assets of Seal-O-Strain after rental payments had been made by plaintiff through the lease-month commencing April 17,1945. The new purchase price was to be $45,000 and the agreement did not provide for the application of any rental payments made by plaintiff against the purchase price so specified.
The net effect of the above described new option agreement was the same as if the rental payments provided for in the original lease between Seal-O-Strain and plaintiff had continued until April 17, 1945, and had been applied against the purchase price ($190,000) specified in the original purchase option agreement, but any rental payments made after the lease-month commencing April 17,1945, could not apply as a reduction of the purchase price of $45,000 under the new purchase option agreement. The plaintiff had paid rentals in the total amount of $145,000 from February 15, 1943, through the lease month ended May 14, 1945 ($85,000 from February 15,1943, to May 14,1944, and $60,000 for the year ended May 14, 1945). Plaintiff also paid an additional month’s rent of $1,500 for the lease month beginning May 15, 1945, so that the total rental payments made by plaintiff amounted to $146,500.
15. On April 16, 1945, the plaintiff received an appraisal of the land on which the leased plant was located in the amount of $6,250, and of the plant building in the amount of $34,375. The appraisal had attached to it a memorandum stating that the assessed value of the land was $15,000 and of the improvements was $35,000.
16. On May 16, 1945, the plaintiff’s board of directors authorized the purchase by the plaintiff of the plant and assets of Seal-O-Strain for $85,001 from Industrial Finance provided Industrial Finance should exercise its option to purchase these assets from Seal-O-Strain for $45,000.
17. On June 13, 1945, Industrial Finance decided to exercise its option to purchase the property from Seal-O-Strain *479 and it also decided to sell that property to the plaintiff, its subsidiary.
18. On June 16,1945, plaintiff acquired the property from Industrial Finance at a price of $85,001 which was set up on the plaintiff’s books at the following values:
Land._ $16,000
Building- 35, 000
Equipment_ 35, 000
Patents_ 1
The plaintiff actually paid to its parent the sum of $45,000 and the balance of the $85,000, or $40,000, was donated by Industrial Finance to plaintiff’s surplus account.
19. During the period from January to March 1946, the plaintiff liquidated and sold the plant and all of its equipment, including the additional equipment purchased and installed for its operations and $1,500 worth of raw materials. Its net book costs were $101,053.09 ($119,722.07 cost less depreciation of $18,668.98). The plant and equipment were sold for $108,710.07 less expenses of $3,813.62 other than liquidating salaries, resulting in a net sales price of $104,896.45 and a net profit on liquidation of $3,843.36.
Since the plaintiff had recorded the plant and equipment acquired from its parent company on its books at $40,000 in excess of its net cost, its actual profit in liquidation amounted to approximately $43,843.36.
20. Defendant takes the position that since the plaintiff ultimately acquired the assets of Seal-O-Strain in June 1945, at a net cost of $45,000, and since the plaintiff’s parent company through which it acquired the assets could have purchased them at any time after February 17, 1943, under the parent’s purchase option agreement with Seal-O-Strain at a cost of $190,000 less any rental payments made by plaintiff, all rental payments made up to April 17, 1945, amounting to $145,000 should be applied and capitalized by the plaintiff as a part of the cost of the plant and equipment, thus eliminating the rental payments from plaintiff’s operating costs for the period of its tenancy. This would make the plaintiff’s ownership of the Seal-O-Strain assets retroactively effective to February 17,1943, at a net cost of $190,000.
*480 21.There is no satisfactory evidence in the record of the value of the assets of Seal-O-Strain in February of 1943. At that time Seal-O-Strain was involved in bankruptcy proceedings and it had filed schedules of its assets and liabilities with the District Court. The declared value of all of its assets was scheduled at $152,455.45. Except for the land which had an appraised value of $15,000, the defendant allocated the option price of $190,000 for depreciable assets on the proportions of values declared in the bankruptcy schedules of Seal-O-Strain as follows:
Land_$15, 000
Building_ 62, 500
Machinery and Equipment_._112, 500
Defendant then proposed to allow depreciation at an annual rate of 2 percent on the allocated value of the building and 20 percent on the allocated value of the equipment amounting in the aggregate to $64,837.54 in lieu of the rental payments of $145,000, but without any allowance for interest, taxes and other normal ownership expense. The reduction in operating costs of $80,162.46 ($145,000 less $64,837.54) would reduce the plaintiff’s overall net loss from $96,368.25 to $16,205.79, and the amount of reduction in costs allocable to Purchase Order A-16545 of $5,123.12, would reduce the loss on this purchase order from $23,582.46 to $18,459.34 with recovery limited by the Lucas Act to the overall net loss of $16,205.79.
22. Other than depreciation, there is no satisfactory evidence of the additional costs of ownership of the Seal-O-Strain property during the lease period from February 17, 1943, to June 13,1945, nor can it be determined whether such depreciation was adequate for the class of equipment involved.
23. During the period covered by the Lucas Act plaintiff was wholly engaged on contracts with the Government and on subcontracts with prime contractors with the Government and it sustained an overall net loss on such work of $96,368.25 which includes the loss of $23,582.46 on Order No. A-16545.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter *481 of law the plaintiff is entitled to the sum of $23,582.46 in settlement of its claim. Therefore, pursuant to Section 6 of the Lucas Act, 60 Stat. 902, as amended by 62 Stat. 922, the Department of the Navy is directed to settle this claim in the amount of twenty-three thousand, five hundred, eighty-two dollars and forty-sis cents ($23,582.46).